

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*    *(203)821-3700*
*157 Church Street 25th Floor*    *Fax (203) 773-5376*
*New Haven, Connecticut 06510*    *www.justice.gov/usao-ct*

June 23, 2015

Jeremy N. Weingast
Attorney at Law
650 Farmington Avenue
Hartford, CT 06105

     Re:    United States v. Matthew Tollis
              Criminal No.: 3:15CR 110 (JCH)

Dear Attorney Weingast:

     This letter confirms the plea agreement between your client, Matthew Tollis (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government" or "this Office") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

     Tollis agrees to waive his right to be indicted and to plead guilty to a one-count information charging him with conspiracy to violate 18 U.S.C. § 844(e) by maliciously conveying false threatening communications, in violation of 18 U.S.C. § 371.

     The defendant understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

         1.      That two or more persons entered into an unlawful agreement the object of which was to send threatening communications through the use of an instrument of interstate or foreign commerce concerning an attempt to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building or other real or personal property, namely a bomb threat hoax;

Jeremy Weingast, *Esq.*
Page 2

    2.    That the defendant knowingly and willfully became a member of the conspiracy; and

    3.    One of the members of the conspiracy committed at least one of the overt acts set forth in the Information to further the objective of the conspiracy.

## THE PENALTIES

This offense carries a maximum penalty of 5 years of imprisonment and a $250,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than 3 years to begin at the expiration of any term of imprisonment. The defendant understands that, should he violate any condition of the supervised release, he may be required to serve a further term of imprisonment of up to 2 years per violation with no credit for time already spent on supervised release.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

The defendant is also subject to restitution, as discussed below. Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572 (h), (i) and § 3612(g).

### Restitution

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. §3663, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court. Because this case involved making hoax threats, Tollis understands that he may also be subject to reimbursement for the costs associated with fire or rescue services incurring expenses incident to emergency or investigative responses due to the swat calls.

## THE SENTENCING GUIDELINES

### Applicability

Jeremy Weingast, *Esq.*
Page 3

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. §3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant expressly understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3, and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's

Jeremy Weingast, *Esq.*
*Page 4*

assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation, which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2A6.1 is 12. That level is increased by 4 under U.S.S.G. §2A6.1(b)(4) as the offense resulted in substantial disruption of public, governmental, or business functions or services. In addition, pursuant to U.S.S.G. § 3D1.4, 5 levels are added because Tollis participated in more than five separate threatening communications. Two levels are subtracted under U.S.S.G. §3B1.2(b) as the defendant was a minor participant in the criminal activity. The adjusted offense level is 19. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 16.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 16, assuming a Criminal History Category I, would result in a range of 21 to 27 months of imprisonment (sentencing table) and a fine range of $7,500 [struck through; handwritten: $5,000] to $75,000 [struck through; handwritten: 50,000], U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

[Handwritten margin note: (HR) $5,000  ✓ 50,000]

Jeremy Weingast, *Esq.*
*Page 5*

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties expressly reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed one year and a day, three year term of supervised release, a $ 100 special assessment, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation

Jeremy Weingast, *Esq.*
*Page 6*

Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is knowingly and intelligently waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the

commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he

Jeremy Weingast, *Esq.*
Page 8

is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in this conspiracy to convey false threatening communications, which forms the basis of the information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his plea of guilty.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*/s/*

KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY

*/s/*

STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY

Jeremy Weingast, *Esq.*
*Page 9*

    The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____   \_\_\_6-23-15_____
MATTHEW TOLLIS                                    Date
The Defendant


    I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____   \_\_\_6.23.15_____
JEREMY N. WEINGAST, ESQ.                   Date
Attorney for the Defendant

## STIPULATION OF OFFENSE CONDUCT

The defendant Matthew Tollis and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the indictment/information:

1. TeAM CrucifiX or Die ("TCOD") was a group of international Microsoft X-Box players. An individual who identified himself as "Verified" and who appears to reside in Scotland was one of the two founders of TCOD and recognized as a leader of the group. In 2014, individuals associated with TCOD made a series of "swatting" calls to various universities and institutions. "Swatting" is the making of a threatening hoax call to any emergency service to elicit an emergency response based on the false report of an ongoing critical incident. Incidents typically produce the deployment of SWAT units, bomb squads, and other police units, as well as the evacuations of schools, businesses and residences.

2. When TCOD placed these calls, they used a default Skype telephone number (Skype is an internet-based communication service) to call the institution.

3. Matthew Tollis knowingly and willfully participated in several of the calls, usually listening and/or laughing in the background. Tollis also identified potential institutions for TCOD members to make the threatening calls, including the University of Connecticut and Boston University and gathered information about the targeted institution including telephone numbers.

4. On April 3, 2014, Tollis participated in a TCOD call made to the University of Connecticut. Members of TCOD used a default Skype telephone number to call the University's Admissions Department. The caller claimed that plastic explosives had been placed in the Admissions Building in order to kill people.

5. As a result of TCOD's call, the University of Connecticut was placed in lockdown for three hours while law enforcement – including the UConn Police, Connecticut State Police, and SWAT teams – searched the university.

6. Tollis also participated in five other TCOD swatting calls:

    a. On January 14, 2014: a call to Hebron High School located in Carrollton, Texas, claiming that a firearm and a bomb had been placed in the building. As a result of the call, the Hebron High

      School was evacuated and the Carrollton, Texas Special Weapons and Tactical Team responded to clear the school;

  b. On January 15, 2014: a call to St. John Vianney High School located in Holmdel, New Jersey, claiming that a masked man with a pistol and sarin gas was on campus. Holmdel Police immediately responded to St. John Vianney High School and evacuated the building. Over 1,000 students plus faculty and staff had to be evacuated. In addition to the Holmdel Police, the Monmouth County Emergency Response Team ("MOCERT"), the Federal Bureau of Investigation, the Monmouth County Prosecutor's Office, the Monmouth County Sherriff's Department, and the Monmouth County K-9 Explosive Detection Unit, among other units, responded to the scene;

  c. On January 16, 2014: a call to Allentown Regional High School ("ARHS") located in Allentown, New Jersey, claiming that a bomb was placed in the school. A male caller had called the main telephone number at ARHS claiming a bomb had been placed in the lavatory. ARHS is a K-12 school of 3,000 students. Because the caller had not specified which school, New Jersey State Police ordered the entire school system be evacuated;

  d. On April 3, 2014: a call to the University of Connecticut claiming that plastic explosives were placed in a building. As a result of the swat call, the University of Connecticut was placed in lock down for approximately three hours while law enforcement searched the University;

  e. On April 3, 2014: a call to Boston University located in Boston, Massachusetts, claiming that C4 explosives and an assault rifle were on campus. The Boston Police Department and other agencies cleared the area and no explosives or firearms were discovered;

  f. On April 11, 2014: a call to the Boston Convention & Exhibition Center located in Boston, Massachusetts, claiming that explosives had been placed around the building and that individuals ("BCEC") would be killed with an assault rifle. The caller identified himself as Matt Hag and stated that he was also watching the BCEC from his jeep and was going to attack with an assault rifle to kill as many people as possible. Hag claimed that he was an Iraqi national who migrated to the United States in 2006 and was working for Allah. Hag claimed that he was upset that innocent

Iraqis were being killed and stated that his children were murdered by Marines. The area was swept by bomb squads and no explosives were found. At the time this incident occurred, the PAX East Gaming Show was scheduled to take place at the BCEC with 60,000 expected attendees.

7. In addition to the above calls, members of TCOD were also involved in making the following swatting calls. Tollis did not participate directly on these swatting calls but became aware of them after the calls were made or listened to the recordings and was able to identify the caller making the threat as Verified:

   a. On April 15, 2014: a call was made to a residence in Willimantic, Connecticut. The caller identified himself as "Robert" and claimed that he had just shot his mother. "Robert" claimed to be still in the house with a gun. The residence was in close proximity to various schools which were all placed in lock down. Law enforcement responded to the residence (with weapons drawn), while a hostage negotiator engaged with "Robert" remotely via telephone;
   b. On July 5, 2014: a call was made to the Harvard Police Department claiming that bombs had been placed in four dormitories and the law center and the caller, who Tollis was able to identify by the caller's voice as Verified, also added that they were armed with AR15 assault rifles;
   c. On August 2, 2014, a call was made to the Newton, Massachusetts, Police Department Dispatch, and the caller stated that he was in the bathroom of the American Gaming League, a business located in Newton, with a Glock .40 and an AR-15 "fully loaded and ready to go." The individual also stated that he wanted to kill everyone. As a result of this incident, a request was made from the Middlesex District Attorney's Office to issue an administrative subpoena to Twitter, Inc. for subscriber information relating to a specific Twitter account. The Middlesex County District Attorney's office subsequently approved this request and issued an administrative subpoena. The paralegal whose name appeared on the subpoena received a threatening call at her home;
   d. On August 19, 2014, a call was made to the University of Connecticut 911 dispatch from an employee of the Tasker Building on the University of Connecticut campus. The complainant told dispatch that she had received a bomb threat against the campus. The complainant explained that the caller indicated that a bomb would detonate within fifteen minutes "around the campus."

      e. On September 4, 2014, a call was again made to the University of Connecticut Police Department. During this call, the caller identified himself as Robert Barr from Scotland, admitted making a prior threatening call to the University of Connecticut with Matthew Tollis, and the caller made another bomb threat during this call. After listening to the call, Tollis was able to identify the caller's voice as the individual known as Verified.

      The written stipulation above is incorporated into the preceding plea agreement. The defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

_____
MATTHEW TOLLIS
The Defendant

_____
KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY

_____
JEREMY N. WEINGAST
Attorney for the Defendant

_____
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A. The order of restitution may include:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -
   (I) the value of the property on the date of the damage, loss, or destruction; or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

Jeremy Weingast, *Esq.*
*Page 15*

The order of restitution has the effect of a civil judgment against the defendant. In addition to the court-ordered restitution, the court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3614; 3613A. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.